UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
SEP 27 2004
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

| | |
|---|---|
| CHRISTOPHER MEDRANO § | |
| Plaintiff. § | |
| § | |
| § | |
| § | No. SA-02-CA-1003-RF |
| § | |
| CITY OF SAN ANTONIO § | |
| Defendant. § | |

## ORDER GRANTING DEFENDANT'S MOTION
## FOR JUDGMENT AS A MATTER OF LAW

BEFORE THE COURT is Defendant's Motion for Judgment as a Matter of Law (Docket No. 58) and Plaintiff's Response. A jury was empaneled on February 17, 2004, and the jury trial lasted four days. The jury returned a verdict for the Plaintiff on two claims under the Americans with Disabilities Act ("ADA"):[1] failure to make reasonable accommodation[2] and retaliation.[3] After the jury verdict, the Court instructed the parties to submit briefs on Defendant's Motion for Judgment as a Matter of Law ("JMOL"). Both parties complied. After due consideration, the Court GRANTS the Motion.

### FACTUAL BACKGROUND

Plaintiff, Christopher Medrano, suffers from cerebral palsy, which impairs his ability to walk. As a result, Plaintiff is dependent on public paratransit service for transportation to and from work. Because of the paratransit schedule, Plaintiff is only able to work certain shifts. Plaintiff worked for Defendant, the City of San Antonio, as a temporary parking attendant from approximately November 1995 until June 1996, at which time he was selected for a position with Defendant as a part-time airport parking attendant.

---

[1] 42 U.S.C. § 12101, et seq.

[2] *See id.* at § 12112.

[3] *See id.* at § 12203(a).

R:\Kapur\Civil\Medrano v. City of SA\JNOV Order.wpd - Page 1



Plaintiff worked in that capacity for approximately one year until Defendant terminated him in January 1997. After termination, Plaintiff filed a charge of disability discrimination with the EEOC and subsequently filed a lawsuit against Defendant that settled. Plaintiff returned to the position of part-time parking attendant in November 1998. On January 21, 2000, Defendant informed employees via memorandum that temporary positions were going to be eliminated. Defendant then eliminated the position of part-time parking attendant on February 4, 2000, and Plaintiff once again lost his job.

During the period that Plaintiff worked at the airport before part-time positions were eliminated, Plaintiff received a preferential first-shift assignment as an accommodation for his disability. The first-shift assignment enabled him to use the public paratransit service to commute to work. This accommodation violated the applicable seniority policy at the time that governed shift assignments for airport parking attendants. During this period, Plaintiff was the only airport parking attendant to receive the accommodation of preferential shift assignments. After Plaintiff's termination on February 4, 2000, when the position of part-time parking attendant was eliminated, no other deviation from the airport's seniority policy for shift assignments occurred.

On May 15, 2000, Gregory Lawrence became the City Aviation Department Parking Manager. On May 19, 2000, Lawrence and other city employees conducted interviews of candidates for full-time parking attendant positions. Plaintiff was one of the candidates, and as part of his application he requested an accommodation for his disability. Lawrence testified that he denied the application because the requested accommodation would violate Defendant's seniority policy.

Plaintiff alleges that in July 2000, he placed a follow-up telephone call to Lawrence to inquire about the job. Plaintiff testified that during this telephone call Lawrence told him that his application had been unsuccessful and that Lawrence did not want to hire "trouble makers." No other witness claimed Lawrence actually made a statement to that effect, and Lawrence denied making the statement.

PROCEDURAL BACKGROUND

Plaintiff instituted this action against Defendant for violations of the ADA stemming from Defendant's failure to hire Plaintiff for the full-time parking attendant position. There was a trial on the merits, at which Defendant moved for JMOL at the end of Plaintiff's case. The Court denied the Motion, and the jury subsequently found in favor of Plaintiff and awarded damages for mental anguish. Plaintiff presented three arguments for liability at trial, and the jury responded to each in special interrogatories. First, Plaintiff maintained that a third "graveyard" shift was available at the time Plaintiff applied, which did not conflict with the seniority system and met the requirements of the transit schedule. Second, Plaintiff argued that there were special circumstances in this case that made an exception to the seniority policy reasonable. Third, Plaintiff contended that Defendant retaliated against Plaintiff for a past discrimination claim.

The jury found defendant liable on the latter two claims. It found: (1) special circumstances existed that made an exception to the seniority policy reasonable; and (2) retaliation occurred. These two claims form the basis of the instant dispute.

DISCUSSION

I.  **JMOL Standard**

Rule 50(b) of the Federal Rules of Civil Procedure states that if a court does not grant a motion for JMOL presented at the close of evidence, then the court is considered to have submitted the action to the jury subject to the court's later decision on the legal issues raised by the motion.[4] A movant may reurge its request for JMOL by filing a motion no later than ten days after entry of judgment.[5] In ruling on a renewed motion where a verdict was returned, the court may either allow the judgment to stand, order a

---

[4] FED. R. CIV. P. 50(b).

[5] *Id.*

new trial, or direct entry of Judgment as a Matter of Law.[6]

Following a full trial, a Court must look primarily at the evidence presented at trial as well as the arguments of the parties at trial in evaluating the propriety of a JMOL.[7] As discussed more fully below, this Court finds that Plaintiff failed to present sufficient evidence to permit a reasonable jury to find in his favor in this case. Therefore, the Court grants Defendant's Motion for JMOL.

## II.     Failure to Make Reasonable Accommodation

The Court first assesses the verdict concerning Defendant's failure to make a reasonable accommodation and then analyzes the verdict concerning retaliation. In *U.S. Airways v. Barnett*, the Supreme Court held that an accommodation violating an existing seniority system generally is unacceptable.[8] The Court held:

> The statute does not require proof on a case-by-case basis that a seniority system should prevail. That is because it would not be reasonable in the run of cases that the assignment in question trump the rules of a seniority system. To the contrary, it will ordinarily be unreasonable for the assignment to prevail.[9]

Based upon this ruling, an accommodation requiring a change of rules in a seniority system is not reasonable in the run of cases. Thus, Defendant need not prove its seniority system should prevail. Rather, the burden lies with Plaintiff to prove that special circumstances exist which justify that the existing seniority system be trumped.[10]

Although Plaintiff argues that *Barnett* requires a case-by-case factual analysis of special

---

[6] *Id.* at 50(b)(1)(A).

[7] *See Allied Bank-West, N.A. v. Stein*, 996 F.2d 111, 114 (5th Cir. 1993).

[8] 535 U.S. 391 (2001).

[9] 535 U.S. at 403.

[10] *Id.* at 405-06.

circumstances, the Court disagrees with Plaintiff's interpretation. Plaintiff supports its contention by citing the *Barnett* holding that a plaintiff "remains free to show that special circumstances warrant a finding that . . . the requested 'accommodation' is reasonable on the particular facts."[11] The Court may consider reasonableness based on special circumstances of the case, but it is not required to identify proof on a case-by-case basis that a seniority system should prevail.[12] Therefore, Plaintiff's assertion of a fact-driven analysis does not override the general presumption that accommodations contrary to seniority policies are unreasonable in the run of cases. Instead, as stated previously, Plaintiff must prove that despite the assumption favoring the existing seniority system, special circumstances exist to justify a departure in the instant case.

The Court must determine the scope of the seniority system in order to assess whether 'special circumstances' necessitated a reasonable accommodation under the ADA. Here, the seniority system might include the entire history of the program; or given management's change in policy, the relevant seniority system might include the time of the policy change in 2000 to the date of trial. The *Barnett* Court stressed the importance of maintaining a seniority system that meets the employees' expectations of consistent, uniform treatment.[13] Employees understandably rely on the policies in place at the time of their employment. Because Defendant's employees were notified of the change in seniority policy as of Defendant's January 21, 2000 memo, the Court will confine its analysis to the employer's most recent policy. Therefore, Plaintiff's claims will be considered only as to any exceptions made following February 4, 2000 when Plaintiff was terminated under the new policy.

In analyzing whether an accommodation was reasonable under the relevant seniority system,

---

[11] *Id.* at 405.

[12] *See id.* at 403.

[13] *See id.* at 403; *see also* Leading Cases, *III. Federal Statutes and Regulations: A. Americans with Disabilities Act*, 116 HARV. L. REV. 342, 344 (2002).

the Court first looks to whether Plaintiff proved the existence of special circumstances. In *Barnett*, Justice Breyer provides two examples of possible special circumstances:

> The plaintiff might show, for example, that the employer, having retained the right to change the seniority system unilaterally, exercises that right fairly frequently. In this manner, employee expectations are therefore reduced that the system will be followed such that one more departure, needed to accommodate an individual with disability, will not make a difference. Alternatively, Plaintiff might show that the system already contains exceptions such that, in the circumstances, one further exception is unlikely to matter.[14]

*Barnett* held that the plaintiff carried the burden to establish special circumstances such as these in order to show that an exception from the seniority system was reasonable in a particular case. The Court, however, did not intend for these examples to exhaust the kinds of showings plaintiff might make.[15]

      A.    "Fairly Frequent" Exceptions to the Seniority Policy Did Not Occur to Establish a Special Circumstance

Plaintiff alleges that Defendant's authority to unilaterally change the seniority policy and its prior grant of exceptions to Plaintiff created special circumstances under *Barnett* that were sufficient to justify an exception to the seniority rules. The Court disagrees. Defendant's authority to amend the seniority policy unilaterally does not constitute a special circumstance in and of itself. Moreover, the changes in the plan did not occur fairly frequently or establish other bases that would establish a special circumstance. As a matter of law, Plaintiff failed to establish special circumstances to overcome the presumption that ordinarily it is reasonable to deny an accommodation conflicting with the seniority system.[16]

---

[14] 535 U.S. at 405.

[15] *Id.*

[16] *See id.* at 405-406.

Justice Breyer's first example of a special circumstance in *Barnett* considers whether accommodations were made "fairly frequently," yet the *Barnett* decision does not define the phrase. This Court finds no binding precedent on the meaning of fairly frequently in this context. This Court, therefore, will interpret fairly frequently in its ordinary meaning. The Random House College Dictionary defines fairly as tolerably, moderately, actually or completely.[17]

Defendant contends witness testimony at trial shows that no exceptions to Defendant's seniority policy occurred since it was instituted in 2000. Defendant further alleges that between 1983 and 2000 and under different management, the only exception made was for Plaintiff's benefit. Defendant's assertions gain support from trial testimony. Joe Blanco, former Parking Manager from 1983 to 2000, testified that he knew of no exceptions made to the seniority policy for full-time parking attendants. Former Parking Superintendent (1984 to 2000) Charles Mayes concurred, stating that during his tenure he knew of no exceptions for full-time parking attendants and that exceptions to benefit Plaintiff were the only ones made for temporary or part-time attendants. Offering testimony about the new seniority policy, current Parking Manager Greg Lawrence also testified that no exceptions to the seniority policy occurred during his tenure. Lastly, Parking Attendants Robinson, Salinas, and Vasquez testified that they were unaware of exceptions to the seniority policy and expected it to be followed. Testimonial evidence does not indicate that exceptions to the seniority policy occurred fairly frequently.

Viewing the evidence in the light most favorable to the Plaintiff as the prevailing party, the jury possessed insufficient evidence to conclude that past exceptions to the seniority policy took place fairly frequently. First, Plaintiff never presented evidence that any exceptions, let alone fairly frequent ones, were made to him or other employees under the new seniority system. Plaintiff conceded to this

---

[17] *The Random House College Dictionary*, 475 (Jess Stein ed., Revised ed., Random House 1982).

point in his trial testimony. Second, Plaintiff alleged at trial only that he and one other employee, Carman Hill, received exceptions under the old seniority system. Plaintiff maintains that these regular exceptions are fairly frequent on their face. Were this Court to consider the old seniority system and these shift assignment accommodations, evidence of accommodations for two disabled employees out of dozens others fails to rise to the level of fairly frequent exceptions.

The Court concludes that no evidence was presented to the jury to evince fairly frequent exceptions to the seniority system. Because the Court only looks to the most recent seniority policy, insufficient evidence was presented to the jury as a matter of law for it to find special circumstances existed under the "fairly frequently" example.

    B.    <u>Evidence Does Not Establish that Exceptions Exist such that One More Deviation from the Seniority Policy Is Unlikely to Matter</u>

According to the second example articulated in *Barnett*, Plaintiff may establish special circumstances by showing that the seniority system already contains exceptions such that making one further exception is unlikely to matter.[18] To fulfill the elements of this example, Plaintiff must show, first, that the seniority system already contains exceptions, and second, that there have been sufficient exceptions such that one more is unlikely to matter. As discussed above, Plaintiff has failed to present evidence of any changes or exceptions to the seniority system since the new policy was adopted in 2000. Because no evidence on record indicates that exceptions were made under the current seniority system, Plaintiff's claim of special circumstance did not meet the first element of the *Barnett* example.[19] Likewise, Plaintiff's claim fails under the second element because without evidence of a

---

[18] *Barnett* at 405.

[19] *See Office Of The Architect Of The Capitol v. Office Of Compliance*, 361 F.3d 633, 642 (9th Cir. 2004).

single exception, Plaintiff certainly did not demonstrate that a sufficient number exceptions occurred such that one more would not make a difference.

Plaintiff argues that his situation falls under this second *Barnett* example because his fellow employees voiced few complaints about the accommodations offered to him. He contends that evidence of his co-workers' acceptance of the previous exceptions made on his behalf indicates that another exception was "unlikely to matter." Plaintiff's argument is unpersuasive. First, although evidence indicates that employee's expressed few complaints about the past exceptions, those exceptions were made under the out-dated seniority policy. Second, Plaintiff failed to satisfy the aforementioned elements of *Barnett's* second example, namely he did not show that the seniority policy already contained exceptions. Third, Plaintiff incorrectly construes the purpose of the phrase "unlikely to matter" in this analysis. The phrase does not intend for courts to take an opinion poll of employees' views regarding each accommodation. Instead, the phrase qualifies the quantity of exceptions that a plaintiff must show in order to demonstrate that a subsequent exception would not diverge from the common practice at his/her workplace. Without showing a single exception to the seniority policy, Plaintiff could not, as a matter of law, proceed to prove that a subsequent exception was unlikely to matter.

Plaintiff failed to carry his burden to explain that special circumstances existed in this particular case such that an exception to the Defendant's seniority policy could constitute a 'reasonable accommodation' even though in the ordinary case it could not.[20] On the basis of *Barnett*, the Court holds that there is no legally sufficient evidentiary basis for a reasonable jury to find that Plaintiff established special circumstances existed in this case.[21] Therefore, Defendant's Motion for Judgment

---

[20] *See Barnett* at 406.

[21] *See* FED. R. CIV. P. 50(a).

as a Matter of Law should be granted as to the first issue of whether Defendant failed to provide Plaintiff a reasonable accommodation.

### III.    Retaliation

Defendant also asserts that as a matter of law, a reasonable jury could not have found for Plaintiff's retaliation claim. The Supreme Court in *McDonnell Douglas Corp. v. Green* defined the requirements of a prima facie case for a retaliation claim under the Age Discrimination and Employment Act (ADEA).[22] Although the case at bar is an ADA claim, the Fifth Circuit applies the *McDonnell Douglas* parameters in ADA cases as well.[23] In *Holtzclaw*, the Fifth Circuit outlined the following guidelines for establishing a prima facie ADEA retaliation case:

> To establish a *prima facie* retaliation claim under the ADEA . . . [plaintiff] must show (1) that he engaged in a protected activity, (2) that there was an adverse employment action, and (3) that a causal link existed between the protected activity and the adverse employment action.[24]

The Fifth Circuit, in *Sherrod*, addressed the third factor of a prima facie retaliation case – the causal link between protected activity and the adverse employment action – in an ADA retaliation claim similar to the instant cause of action.[25] Plaintiff Sherrod worked as a flight attendant for Defendant American Airlines ("American") for twenty years. Due to a serious injury, Sherrod was unable to perform the duties of a full-time flight attendant. Sherrod then filed an EEOC complaint in order to regain her flight attendant position, but she was not rehired, in part because her physical disability prevented her from performing the job duties of a full-time flight attendant. Sherrod then

---

[22] 411 U.S. 792, 804 (1973); *see also Holtzclaw v. DSC Communications Corp.*, 255 F. 3d 254, 260 (5th Cir. 2001).

[23] *See Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998).

[24] *Holtzclaw*, 255 F.3d at 259; *see also Sherrod*, 132 F.3d at 1122 n.8.

[25] *See Sherrod*, 132 F.3d at 1122.

filed suit, and American's summary judgment on Sherrod's ADA claim was upheld on appeal.[26] The *Sherrod* court found that in order to establish the causal link between protected conduct and an adverse employment action, Plaintiff must produce evidence to show that the employer's decision to terminate was based in part on knowledge of the employee's protected activity.[27] A causal link may be established by evidence that the "ultimate decision maker" automatically approved a recommendation to terminate made by an employee who knew of the protected activity.[28] In contrast, that link can be severed if evidence shows the ultimate decision maker made an independent investigation into the circumstances of the employee's termination.[29]

Plaintiff failed to prove a prima facie case of retaliation at trial. Although he established that he engaged in a protected activity by filing a complaint with the EEOC, he did not offer evidence sufficient to create a causal link between those two elements. No evidence was presented to show that the "ultimate decision maker," Lawrence, was pressured to terminate Plaintiff based on another employee's knowledge of Plaintiff's EEOC complaint. In fact, Lawrence testified at trial that the other hiring committee members had no knowledge of Plaintiff's protected activity. Plaintiff's assertion at trial that he believed Lawrence thought he was a troublemaker does not create a causal link between Plaintiff's EEOC complaint and Lawrence's decision not to hire him. Therefore, since Plaintiff failed to carry his burden at trial in proving a causal link, a reasonable jury could not have found that Plaintiff established a prima facie basis of retaliation at trial.

Even if it were found that Plaintiff had proven a prima facie case of retaliation, Defendant

---

[26] *Id.*

[27] *See id.*

[28] *Id.*

[29] *Id.*

offered a legitimate justification for not hiring Plaintiff. The *Sherrod* court found the *McDonnell Douglas* burden-shifting analysis appropriate for claims of unlawful retaliation under the ADA. Under *McDonnell Douglas*, if Plaintiff can establish a prima facie case of retaliation, the burden shifts to the defendant to come forward with a legitimate, non-discriminatory reason for the adverse employment action.[30] If the Defendant comes forward with such a reason, then Plaintiff must proffer sufficient evidence such that a reasonable trier of fact could find the reason to be merely pretextual.[31]

In the instant case, Defendant responded to Plaintiff's allegations with a legitimate justification for not hiring Plaintiff. Lawrence asserted that he did not hire Plaintiff for the position of full-time parking attendant because he did not possess enough seniority to bid for the position. Lawrence expressly denied having called Plaintiff a troublemaker, and stated that the other interview panelists were unaware of Plaintiff's EEOC complaint. Although Plaintiff testified that he thought Lawrence did not hire him because he was a troublemaker who filed a complaint with the EEOC, Plaintiff admitted Lawrence never used that language. As discussed above, fulfilling the requirements of the current seniority system serves as a legitimate non-discriminatory purpose because it fulfills employee expectations of equitable treatment.[32] Therefore, Defendant carries its burden in proving a legitimate, non-discriminatory reason for not hiring Plaintiff. Had Plaintiff shown a prima facie case for retaliation, the claim would be defeated based on the above analysis, and judgment as a matter of law for defendant would be appropriate.

Finding Defendant's reason legitimate and non-discriminatory, the burden would shift back to

---

[30] *See Id.* at 1121.

[31] *Id.*

[32] *Barnett*, 533 US at 403; *see also* 116 HARV. L. REV. at 344.

R:\Kapur\Civil\Medrano v. City of SA\NOV Order.wpd - Page 12

Plaintiff to prove the proffered reason is merely pretextual.[33] However, such proof is unnecessary due to Plaintiff's failure to make a prima facie retaliation claim. Assuming *arguendo* Plaintiff had carried that burden, and Defendant successfully rebutted the presumption, Plaintiff fails to prove the proffered reason is merely pretextual. Although Plaintiff testified as to his personal opinion that the reason behind the decision not to hire him was due to his EEOC complaint, he offered no actual evidence of pretext. A reasonable jury thus could not have found retaliation as a matter of law. Consequently, this Court grants Defendant's Motion for JMOL as to the retaliation claim.

## IV. Damages

Given that the Court has resolved all liability issues in favor of Defendant, issues regarding damages are moot.

### CONCLUSION

It is hereby ORDERED that Defendant's Motion for Judgment as a Matter of Law, pursuant to Federal Rule of Civil Procedure 50(b) be GRANTED as to the Failure to Accommodate and Retaliation claims.

IT IS SO ORDERED.

Signed this 27th day of September, 2004.

*Royal Furgeson*
ROYAL FURGESON
UNITED STATES DISTRICT COURT

---

[33] *See Sherrod*, 132 F.3d at 1121.